UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------ X
In re:

      Thomas Haemmerle,                Case No.: 06-71530-ast
                                          Chapter 7
                        Debtor.
------------------------------------------------------X

## DECISION AND ORDER GRANTING IN PART DEBTOR'S MOTION TO HOLD WELLS FARGO BANK, N.A. IN CONTEMPT FOR VIOLATION OF DEBTOR'S DISCHARGE INJUNCTION

      Pending before the Court is the motion of debtor, Thomas Haemmerle, ("Debtor"),

seeking to hold Wells Fargo Bank, N.A. ("Wells Fargo") in civil contempt for willfully and

repeatedly violating his discharge injunction (the "Motion"). Debtor seeks sanctions, actual and

punitive damages, emotional distress damages and attorney's fees. After review of the parties'

stipulated facts, exhibits and extensive briefing, and for the reasons set forth herein, the Motion

is granted in part.

## JURISDICTION

      This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (I) and (O), and 1334(b), and the Standing Orders of Reference in effect in the

Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but

made effective *nunc pro tunc* as of June 23, 2011.

## FINDINGS OF FACT[1] AND CONCLUSIONS OF LAW

      This decision constitutes the Court's findings of fact and conclusions of law in

accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

---

[1] The factual background and procedural history are derived from the pleadings, exhibits submitted by the parties as well as the *Stipulation of Undisputed Facts* filed on July 8, 2014 at docket item 28 ("Undisputed Facts")

## BACKGROUND AND PROCEDURAL HISTORY

### *Factual Background*

i.       *Debtor's Bankruptcy and Discharge*

On June 30, 2006, Debtor filed a voluntary petition for relief under Chapter 7 of the

Bankruptcy Code[2].  [dkt item 1]  Debtor's case was denominated as a no asset case and creditors

were instructed to not file proofs of claim[3].  Wells Fargo was neither scheduled as a creditor nor

listed on Debtor's creditor matrix filed under Rule 1007-1 of the Local Bankruptcy Rules for the

Eastern District of New York.  [dkt item 1]  Thus, Wells Fargo did not receive notice of the

commencement of Debtor's bankruptcy case.

On August 14, 2006, Debtor was examined at a § 341 meeting.  Undisputed Facts, ¶ 12.

The § 341 meeting was closed and the Trustee filed a Report of No Distribution.  *Id*., ¶ 14.

On October 16, 2016, Debtor received his discharge (the "Discharge Order").  *Id*., ¶¶ 15,

16; [dkt item 11].  On October 18, 2006, the Clerk of the Court mailed notice of the Discharge

Order to the creditors disclosed by Debtor and to all other parties-in-interest.  [dkt item 12]

Wells Fargo did not receive notice of the Discharge Order. Undisputed Facts, ¶¶ 10, 17.

ii.       *Debtor's Pre-Petition Mortgage Loan and Subsequent Divorce Proceedings*

On April 15, 2005, Debtor obtained a loan in the principal amount of $337,000 from

World Savings Bank, FSB ("WSB") (the "Loan").  Undisputed Facts, ¶¶ 1, 3.  Debtor executed a

note (the "Note") in connection with the Loan and contemporaneously therewith Debtor and his

then-wife, Josette Infozino ("Infozino"), executed a mortgage to secure the Note (the

"Mortgage").  The Note and Mortgage were executed in connection with the refinance of a lien

---

[2] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] "Rule 2002(e) allows the clerk to issue what has become known as the 'no asset' notice.  In a chapter 7 case when
there appear to be no distributable assets, the notice of the meeting of creditors may contain a statement to that
effect. Creditors are requested not to file proofs of claim and are informed that, should assets later become available,
notice of such assets and notice of the bar date for filing proofs of claim will be mailed."  8 COLLIER ON
BANKRUPTCY P. 2002.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see* FED. R. BANKR. P. 2002(e).

against Debtor's home located at 650 Avenue, Massapequa, New York (the "Real Property"). Undisputed Facts, ¶ 2.  According to Wells Fargo and Debtor, Infonzino "didn't sign the note." *See* Exhibit D to Undisputed Facts, page 18, line 2.

WSB later changed its name to Wachovia Bank.  Undisputed Facts, ¶ 3.  Through a series of mergers, Wachovia Bank merged into Wells Fargo.  *Id.*

Pursuant to a separation agreement between Debtor and Infozino dated November 18, 2005 (the "Separation Agreement"), Debtor deeded his interest in the Real Property to Infozino, but neither sought permission from nor notified Wells Fargo of the transfer.  Undisputed Facts, ¶¶ 6, 7.  Infozino did not assume the Loan, nor did Wells Fargo relieve Debtor from his obligation to repay the Loan.  *Id.*, ¶ 8.  However, Debtor believed, based on discussions with his matrimonial lawyer, that the Separation Agreement terminated his interest in the Real Property and relieved him of his obligation to pay the Loan.  *Id.*, ¶ 11.

### iii.    *Collection Activities by Wells Fargo*

Beginning sometime in 2011, after the Loan went into default, Debtor began receiving telephone calls from Wells Fargo regarding the Loan; no exact date has been provided to the Court.  Undisputed Facts, ¶¶ 18, 19.  On April 24, 2013, Debtor's counsel attempted to contact Wells Fargo's CEO by telephone, and left a message at the customer service center regarding Debtor's bankruptcy and discharge.  Undisputed Facts, ¶¶ 24, 25.[4]  That same day, Debtor's counsel sent Wells Fargo a letter outlining its collection efforts during the two year period of 2011 through 2013, and advising Wells Fargo of Debtor's discharge (the "April 24 Letter"); however, Debtor's counsel did not attach a copy of the Discharge Order.[5]  Undisputed Facts, ¶

---

[4] Debtor does not explain why it took him well over a year to advise Wells Fargo of his bankruptcy discharge.
[5] *See* Exhibit B to Undisputed Facts (Debtor's Counsel's letter dated April 24, 2013 addressed to John G. Stumpf, CEO of Wells Fargo in San Francisco and Wells Fargo's P.O. Box and postal address in Des Moines, Iowa).

26.

On April 29, 2013, Wells Fargo sent Debtor a letter seeking to collect the Loan. Undisputed Facts, ¶ 27.

On May 1, 2013, Wells Fargo telephoned Debtor directly to discuss the April 24 Letter. *Id*., ¶ 28.  During the conversation, a representative from the Office of Executive Complaints confirmed Wells Fargo's receipt of the April 24 Letter.  Debtor explained to the representative that he had filed a Chapter 7 bankruptcy, received a discharge, and that his ex-wife was supposed to pay the Loan as part of their Separation Agreement; Debtor also requested Wells Fargo contact his bankruptcy counsel.  *Id.*  The Wells Fargo representative explained that "as it stands right now you're the only name on the loan and you're still responsible for the loan," and that Wells Fargo would research the issue and let Debtor know of their conclusions.  *Id*., ¶¶ 28, 29.

On May 14, 2013, Wells Fargo ignored Debtor's request to contact his attorney, and again telephoned Debtor directly and stated that if "your debt has been discharged in bankruptcy, Wells Fargo Home Mortgage is only exercising this right against your property and is not attempting to hold you personally liable on the note." *id*., ¶¶ 30, 31, but also stated that "as long as your name appears on the loan … the phone calls and collection activity continue…." *Id*., ¶ 35.

On May 17, 2013, Wells Fargo directly sent Debtor a letter (the "May 17 Letter") which acknowledged that "[o]nce Chapter 7 Bankruptcy is filed and discharged, creditors cannot attempt to collect the debt," *id.* ¶ 37, but also stated that "as you were the only person who signed the Note, [Wells Fargo] holds only you financially responsible for repayment of the loan." *See* May 17 Letter, Exhibit F to Undisputed Facts.  The May 17 Letter went on to state: "[a]s [Wells Fargo] was not notified of the bankruptcy a review of this file was conducted.  Upon completion

of our review it was determined that [Wells Fargo] was not included in the bankruptcy; therefore; the bankruptcy does not release you from your obligation to [Wells Fargo]." Undisputed Facts, ¶ 38.

On June 7, 2013, Debtor's counsel wrote a letter (the "June 7 Letter") to the Druckman Law Group, counsel for Wells Fargo at the time, advising them that their attempt to collect the Loan was a violation of the Discharge Order. *Id*., ¶ 40. While the June 7 Letter contained Debtor's name and bankruptcy case number, it did not indicate in which bankruptcy court Debtor's Chapter 7 bankruptcy case was filed, nor (once again) did Debtor's counsel provide a copy of the Discharge Order.

On November 1, 2013, Wells Fargo sent Debtor's counsel a letter acknowledging the April 24 Letter, advising that the matter was being reviewed, and that the results of its inquiry would be completed on or before November 25, 2013. *Id*., ¶ 45.

To that point, from May 1, 2013 through November 5, 2013, Wells Fargo, either *via* a person or through its automated collection system, initiated approximately 137 calls to Debtor, each one related to the Loan. *Id*. ¶¶ 43, 44.

On November 26, 2013, Wells Fargo sent Debtor another letter, reiterating its position that because Debtor failed to schedule the Loan, "…the bankruptcy [did] not release [him] from [his] obligation to the debt. As such; [Wells Fargo] is not in violation of the discharge order and collection attempts will continue per the terms of the Note." *Id*., ¶ 46; quotation in Exhibit K to Undisputed Facts.

### *Debtor's Motion to Reopen the Bankruptcy Case*

On December 10, 2013, Debtor filed his Motion. [dkt item 13]

On March 24, 2014, the Court entered an order reopening Debtor's bankruptcy case. [dkt

item 18]

On April 15, 2014, Wells Fargo filed a *Memorandum of Law in Support of Wells Fargo Bank, N.A.'s Opposition to Debtor's Motion for Contempt* (the "Opposition").  [dkt item 22]

On April 22, 2014, Debtor filed its *Reply to Wells Fargo's Memorandum of Law in Opposition to Debtor's Motion for Contempt*.  [dkt item 24]

On July 28, 2014, Debtor submitted a *Memorandum of Law in Support of Debtor's Motion to Hold Wells Fargo in Contempt* (the "Debtor's Memo of Law").  [dkt item 33]  Also on July 28, 2014, Wells Fargo filed a *Supplemental Memorandum of Law in Further Support of Wells Fargo Bank, N.A.'s Opposition to Debtor's Motion for Contempt* (the "Wells Fargo Supplemental Memo of Law").  [dkt item 34]

On August 11, 2014, Debtor filed a *Memorandum of Law in Reply to Wells Fargo's Opposition to Debtor's Motion for Contempt* (the "Debtor's Supplemental Memo of Law").  [dkt item 35]  Also on August 11, 2014, Wells Fargo filed a *Reply Memorandum in Further Support of Wells Fargo Bank, N.A's Opposition to Debtor's Motion for Contempt* (the "Wells Fargo Second Supplemental Memo of Law").  [dkt item 36]

On August 11, 2014, this Court took the Motion on submission.

### *Arguments of the Parties*

While the pleadings filed in this proceeding are numerous and voluminous, the arguments of the parties can be summarized as follows.  Debtor asserts that: (1) the Loan was discharged in spite of Wells Fargo having not been included in his schedules and not having received notice of this case before it was initially closed; and (2) Wells Fargo violated the Discharge Order by repeatedly seeking to collect on the Loan after it had knowledge of the discharge.

Wells Fargo asserts that: (1) the Loan was not discharged because it had no notice or

knowledge of Debtor's bankruptcy case prior to the case being closed; (2) Debtor has not proved

by clear and convincing evidence that Wells Fargo willfully violated the Discharge Order; (3) it

did not act in bad faith; (4) and it was entitled to exercise its *in rem* rights in the Real Property

regardless of Debtor's discharge.

Debtor does not challenge Wells Fargo's right to exercise its *in rem* rights post-discharge.

*See Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (a secured creditor retains and may

seek to enforce its *in rem* rights as against its collateral post-discharge).

Thus, the threshold issues are: (1) whether Debtor's *in personam* liability to Wells Fargo

was discharged despite Wells Fargo's lack of notice and knowledge of the bankruptcy case prior

to the case being closed; and (2) if the Loan was discharged, whether Wells Fargo violated the

discharge injunction.

## ANALYSIS

A.   ***Prevailing law in this district is that a debt is discharged in a no asset chapter 7
     despite the lack of notice to a creditor***

Notice and an opportunity to be heard are fundamental aspects of procedural due process.

*See DPWN Holdings (USA), Inc. v. United Airlines, Inc. d/b/a United Airlines*, 871 F. Supp. 2d

143, 153 (E.D.N.Y. 2012) (In this chapter 11 case, the court noted that "[b]efore a claim may be

discharged in a bankruptcy proceeding, the claimant must therefore be afforded notice and an

opportunity to be heard.").   When a debtor files a bankruptcy petition, he or she is obligated to,

among other things, list all of his or her creditors along with their addresses, and file schedules

that delineate all assets and liabilities. *See* 11 U.S.C. § 521 and Fed. R. Bankr. P. Rule 1007.

This court's Local Rule 1007-3 requires a debtor to also "file a mailing matrix which shall

include, in alphabetical order, the name and last known mailing address (including zip codes) for

every scheduled creditor."   The court clerk's office generates a notice of the filing of the case to

be sent to all creditors listed in debtor's schedules and other parties in interest; this notice

specifies the time and place of the § 341 meeting, and the deadlines to file a proof of claim,

object to the debtor receiving a discharge and/or object to the dischargeability of a specific debt.

In a no asset case, creditors are told to not file a claim, unless later advised to do so.  *See* Fed. R.

Bankr. P. Rule 2002(e) (allowing the clerk of court to provide a notice of commencement of a

no dividend chapter 7 case, which notice advises creditors "that it is unnecessary to file claims").

Section 523(a)(3) of the Bankruptcy Code[6] "seeks to protect the rights of an unlisted

creditor from having its debts discharged by a debtor without having had notice of the case….".

*In re Delafield 246 Corp.*, Case No. 05-13634, Adv. Proc. No. 05-01834 (ALG), 2007 Bankr.

LEXIS 2804, at *6 (Bankr. S.D.N.Y. Aug. 14, 2007) (citing *In re Cruz*, 254 B.R. 801, 807

(Bankr. S.D.N.Y. 2000)).  However, it is also "well accepted that the failure to give notice to a

creditor will be disregarded in a Chapter 7 no asset case and that in such cases failure to schedule

a prepetition debt will not preclude the discharge of that debt." *Id*. *See also In re Herzig*, 238

B.R. 5 (E.D.N.Y. 1998).

The Second Circuit Court of Appeals has not yet ruled on whether an unscheduled debt is

discharged in a no asset chapter 7 case.  However, courts in the Eastern and Southern Districts of

New York have adopted the "mechanical approach" utilized by the Third, Sixth, Ninth and Tenth

Circuit Courts of Appeals, which have held that the "failure to schedule a prepetition debt in a

---

[6] A discharge …does not discharge an individual debtor from any debt – (3) neither listed nor scheduled …, in time to permit –

> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time to permit such timely filing; or

> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this sub-section, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request…

11 U.S.C. § 523(a)(3)(A)-(B).

Chapter 7 no asset case has no impact on the dischargeability of the debt…." *Delafield*, 2007 Bankr. LEXIS 2804, at *6-7. This "mechanical approach" is based on a plain meaning analysis; that an unscheduled debt is discharged by operation of law because § 523(a)(3) only excludes unscheduled debts from being discharged "if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection," and the creditor did not have "notice or actual knowledge of the case in time to permit" timely filing of a claim. *See Cruz*, 254 B.R. at 808, 810. *But see In re Stark*, 717 F.2d 322, 324 (7th Cir. 1983) (adopting an "equitable approach" that examines the circumstances surrounding a debtor's failure to list a certain creditor in their determination to reopen a debtor's case and schedule an omitted creditor). Said otherwise, where there is no deadline set to file a claim in a no asset chapter 7 case, if the debt at issue does not fall within the category of non-dischargeable debts listed in Sections 523(a)(2), (4) or (6), there is no deadline for the creditor to file a timely claim, and, therefore, the creditor could not have notice of actual knowledge of a deadline to file a claim that has not been set. Claims that fall within Sections 523(a)(2), (4) or (6) would be discharged unless a timely adversary proceeding is filed as required by Section 523(c) and Bankruptcy Rule 4007 (60 days after the date first set for the creditors meeting held under § 341(a)) and, therefore, due process requires the creditor have notice or knowledge of the dischargeability deadline before the otherwise non-dischargeable claim could be discharged.

In *Herzig*, the Eastern District of New York district court directly held that an unscheduled debt was discharged in a no asset chapter 7 case. 238 B.R. at 8-9. This Court accepts *Herzig* as binding precedent. Thus, in this no asset Chapter 7 case, because the court did not establish a deadline for creditors to timely file claims, and because Wells Fargo has not

argued that the Loan is a debt specified in § 523(a)(2), (4) or (6), Wells Fargo's unscheduled

Loan claim has been discharged by operation of law.[7]

**B.** ***A discharge injunction violation can arise from attempts to collect a debt which is discharged despite a lack of notice***

Section 524(a)(2) of the Bankruptcy Code, which creates the discharge injunction, is

unambiguous and makes no distinction between debts which are discharged following notice to a

creditor and those that are discharged despite a lack of notice.  Section 524 provides:

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived

*See* 11 U.S.C. § 524(a)(2).  *See generally Green v. Welsh*, 956 F.2d 30, 32 (2d Cir. 1992).  Wells

Fargo has not cited any authority for the proposition that§ 524 does not protect a debtor from any

attempts to collect on a personal liability which has been discharged in a no asset case despite a

lack of notice to the creditor.

Thus, here, because Debtor's personal liability on the Loan was discharged, any attempt

by Wells Fargo to collect on Debtor's discharged personal liability is a violation of § 524(a)(2);

what damages may be appropriate, however, can only be determined once Debtor has established

by clear and convincing evidence whether and when Wells Fargo knowingly attempted to collect

on the discharged personal liability.

---

[7] Although the courts in this circuit have not applied an equitable standard for discharge of an unscheduled debt, this Court notes that Debtor was forthcoming about the Real Property during the bankruptcy case.  During his § 341 meeting, Debtor informed the trustee about the Real Property and his pre-petition transfer that occurred as a result of his Separation Agreement.  Debtor did not hide an interest in the Real Property, and his belief that he was somehow relieved of his obligations to Wells Fargo was clearly mistaken, but apparently held in good faith.  Undisputed Facts, ¶ 13.

**C.** *A party can only be held liable for a knowing violation of the discharge injunction*

The discharge injunction is intended to further one of the primary purposes of the Bankruptcy Code: giving the debtor an opportunity to make a financial fresh start, unburdened by efforts to collect debts she no longer owes. *Green*, 956 F.2d at 33 (citing *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir. 1989)); *In re Otten*, Case No. 10-74946, Adv. Proc. No. 12-8045 (AST), 2013 Bankr. LEXIS 1920, at *20 (Bankr. E.D.N.Y. May 3, 2013). S*ee also In re Szenes*, 515 B.R. 1, 6 (Bankr. E.D.N.Y. 2014); *In re Nicholas*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2014). Although § 524 does not include an explicit mechanism to enforce this injunction, § 105 of the Bankruptcy Code has been widely accepted as providing statutory authority to enforce the discharge injunction by holding a party who violates the injunction in contempt, and assessing appropriate punishment.[8] *In re Nassako*, 405 B.R. 515 (Bankr. S.D.N.Y. 2009) (citing *In re Thompson*, Case No. 06-32633 (SDG), 2007 Bankr. LEXIS 2830, at *6 (Bankr. N.D.N.Y. Aug. 21, 2007) (quoting § 105)); *Szenes*, 515 B.R. at 6; *Nicholas* 457 B.R. at 225 (enforcement of a debtor's discharge is a core proceeding and "[b]ankruptcy courts retain jurisdiction to enforce and interpret their own orders.") (citations omitted).

A discharge injunction violation may be punished as a civil contempt of court, and requires a two part inquiry: "(1) did the party know of the lawful order of the court, and (2) did the defendant comply with it." *Nicholas* 457 B.R. at 225; *In re McKenzie-Gilyard*, 388 B.R. 474, 481 (Bankr. E.D.N.Y. 2007) (citation omitted)*; In re DiGeronimo*, 354 B.R. 625, 642 (Bankr. E.D.N.Y. 2006) (holding that a violation of the discharge injunction is willful where "the creditor (1) knew that the discharge had issued, and (2) intended the actions which violated the

---

[8] Because Debtor does not assert that this Court has inherent authority to impose sanctions for a violation of the Discharge Order, this Court will only analyze its authority under § 105 to enforce the discharge injunction of § 524. *See, e.g., In re Campora*, Case No. 14-70330 (AST), 2014 Bankr. LEXIS 4276, at * 24-25 (Bankr. E.D.N.Y. Oct. 6, 2014) (citing, among others, *Int'l United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994), *M.A. Salazar, Inc. v. Inc. Vill. of Atl. Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013)).

discharge injunction."); *see also* 4 Collier on Bankruptcy P 524.02[2][c] ("A creditor's actions in violation of the discharge injunction are willful if the creditor knows the discharge has been entered and intends the actions which violated the discharge injunction.").  Thus, while Debtor's personal liability on the Loan was discharged despite a lack of notice, Wells Fargo could not be held liable for a discharge injunction violation unless and until it knew Debtor had received a discharge.  A creditor's knowledge of the discharge injunction may be actual or constructive. *Nassoko*, 405 B.R. at 522.

Further, as contempt is at issue, the burden is on Debtor to prove Wells Fargo knowingly violated the Discharge Order by clear and convincing evidence.  *Nicholas*, 457 B.R. at 224-225; *Nassako*, 405 B.R. at 520 (quoting *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) (internal citations omitted)).

Sanctions for civil contempt may be imposed both to "coerce future compliance" with a court order issued for another party's benefit and to "compensate for any harm that previously resulted" from the noncompliance.  *Chief. Exec. Officers Clubs, Inc.* 359 B.R. 527, 534 (Bankr. S.D.N.Y. 20007) (citing *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998).  In fashioning an appropriate remedy, courts must consider "the nature of the harm and the probable effect of alternative sanctions." *Id.* at 536 (citing *EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir. 2001)).  If a party is held in contempt, various forms of compensatory damages may be awarded; attorneys' fees; litigation costs; travel expenses; other actual losses, such as wages or business income; and possibly emotional distress damages.  *See In re American Medical Utilization Management Corp.*, 494 B.R. 626, 636-638 (Bankr. E.D.N.Y. 2013) (awarding costs and fees as a contempt sanction for violation of the automatic stay); *Russell v. Chase Bank USA, NA (In re Russell)*, 378 B.R. 735, 743-744 (Bankr. E.D.N.Y.

2007) (noting that compensatory damages and attorney's fees may be awarded as a contempt sanction for violation of the discharge injunction); *In re Manzaneres*, 345 B.R. 773, 794-95 (Bankr. S.D. Fla. 2006) (awarding damages for lost wages, attorney's fees and emotional distress); *In re Feldmeier*, 335 B.R. 807, 814 (Bankr. D. Or. 2005) (holding imposition of emotional distress damages is appropriate as compensatory damages for a willful violation of the discharge injunction); *In re Reno*, 299 B.R. 823, 829-30 (Bankr. N.D. Tex. 2003) (awarding debtor emotional distress damages because of attorney's willful violation of a court order); *Torres*, 367 B.R. at 490 (internal citations omitted); *but see In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989) (vacating emotional distress damage award because no authority was cited to support emotional distress damages for civil contempt).  In addition, punitive damages may be appropriate if there is "some sort of nefarious or otherwise malevolent conduct" that demonstrates a "complete and utter disrespect for the bankruptcy laws."  *In re Perviz*, 302 B.R. 357, 369 (Bankr. N.D. Ohio 2003) (holding that a creditor, who willfully violated the discharge injunction, could be held in contempt and ordered to pay $8,000 in punitive damages).

### D.  *Wells Fargo knowingly attempted to collect on Debtor's discharged personal liability*

Debtor has shown by clear and convincing evidence that Wells Fargo knew of the Discharge Order and thereafter knowingly violated the discharge injunction by trying to collect on his discharged personal liability.  The conduct at issue in this decision is: (i) the 137 phone calls Wells Fargo made to Debtor between May 1, 2013 through November 5, 2013, after Wells Fargo had knowledge of the Discharge Order and; (ii) the May 17, 2013 Letter and the November 26, 2013 Letter which explicitly state that Debtor was personally liable for the Loan; this Court is not called upon to assess damages for the nearly two years of collection activities that preceded the April 24, 2013 Letter.  Undisputed Facts, ¶¶ 43, 44.

First, while Wells Fargo does not concede when it knew about Debtor's discharge, it admits knowing of Debtor's bankruptcy filing by May 17, 2013, as it had researched Debtor's bankruptcy and found this case.  Undisputed Facts, ¶ 38.  Wells Fargo asserts that since Debtor's April 24 Letter did not attach a copy of the Discharge Order, Wells Fargo was not adequately notified of the bankruptcy proceedings and the discharge.[9]  This Court disagrees.  While Debtor's counsel could have been more specific in his April 24 Letter, he did expressly state that Debtor had been discharged in bankruptcy and provided the case number and name of Debtor. Wells Fargo clearly knew Debtor lived in Nassau County, New York, based on the address it used to send collection letters to Debtor and the address Debtor used in writing to Wells Fargo. Upon receiving the April 24 Letter, Wells Fargo could have suspended its collection efforts for long enough to conduct a simple, on line Pacer search of this court's bankruptcy records and found this case and the Discharge Order; it is simply not credible to argue it took as large and sophisticated a financial institution as Wells Fargo 23 days to find the records of this case. Thus, for the period between May 1 and May 17, 2013, Wells Fargo, at a minimum, had constructive knowledge of the Discharge Order.

Second, Wells Fargo's assertions that it was only seeking to enforce its lien and not collect a personal debt[10] is also not plausible.  Wells Fargo explicitly stated it was collecting on a personal debt, and its representative specifically informed Debtor that "as long as your name appears on the loan … the phone calls and collection activity continue…"  Undisputed Facts, ¶ 35.  In addition, the May 17 Letter informed Debtor that "as long as you were the only person who signed the Note, [Wells Fargo] holds only you financially responsible for repayment of the loan…."  *See* Exhibit F to Undisputed Facts.  These clear and explicit statements leave no doubt

---

[9] *See* Opposition, pages 3-5; Wells Fargo Second Supplemental Memo of Law, page 3.
[10] *See* Opposition, pages 5-6; Wells Fargo Supplemental Memo of law, page 5; Wells Fargo Second Supplemental Memo of Law, page 3-4.

that Wells Fargo sought to collect the Loan from Debtor personally, not just assert its *in rem* rights.

Wells Fargo is correct that, as a general matter, technical or unintended violations of the discharge injunction, as well as violations that are quickly remedied, should not be punished as contempt. *Nicholas*, 457 B.R. at 226; *Cruz*, 254 B.R. at 816. Wells Fargo correctly cites *In re Garske*[11] for the proposition that a post-discharge phone call is not a *per se* violation under § 524(a)(2) of the Bankruptcy Code. However, the facts in *Garske* are quite different. The *Garske* debtor agreed to retain a secured debt on a vehicle during her Chapter 7 bankruptcy and the secured creditor, on notice of the bankruptcy case, made between 14 and 36 phone calls regarding that debt once the debtor defaulted on the payments post-bankruptcy.[12] Here, Debtor did not attempt to reaffirm any debt to Wells Fargo and clearly mistakenly, but in good faith, believed that his Separation Agreement made the Loan his ex-wife's responsibility.

This Court also rejects Wells Fargo's assertions that its "informational statements" do not constitute a discharge injunction violation. Although Wells Fargo sent Debtor a letter dated February 24, 2014 informing Debtor of the interest rate change on the Loan pursuant to RESPA requirements, which is technical and informational,[13] the many statements in May 17 Letter and November 26 Letter informing Debtor that (i) he is not released from his personal obligations on the Loan and (ii) collection attempts will continue per the terms of the Note, illustrate that Wells Fargo intended to assert *in personam* rights, in addition to enforcing its *in rem rights*.

Wells Fargo's arguments that any of its communications were "technical", "unintended" and not done in bad faith are also rejected. The explicit statements in the voluminous phone calls

---

[11] 287 B.R. 537 (9th Cir. 2002).
[12] The *Garske* parties disputed the number of phone calls; debtor argued 36 calls, while the secured creditor argued that it only made 14 calls. *Garske*, 287 B.R. at 539.
[13] Wells Fargo Second Supplemental Memo of Law, page 4-5.

and letters demonstrate a conscious and deliberate effort by Wells Fargo to collect on the Loan even after being informed of Debtor's bankruptcy and the Discharge Order.

In addition, this Court rejects Wells Fargo's argument that Debtor should have informed it of case law which is contrary to the position Wells Fargo took in its May 17 Letter that its debt had not been discharged.[14]  Wells Fargo's May 17 Letter does not refer to any cases it relies on. It is a large and sophisticated financial institution, and is represented by sophisticated counsel whose research of Second Circuit case law would have yielded *Herzig*, which is directly on point, as well as the other decisions within this circuit which are contrary to Wells Fargo's legal conclusion.

Finally, after nearly 2 years of unsuccessful collection activities prior to May 1, 2013, Wells Fargo had numerous opportunities throughout the 6 months after learning of Debtor's discharge during within it which it could have ceased collection efforts long enough to seek to reopen this case, and ask this Court if Debtor's liability on the Loan had been discharged.

Thus, Debtor has proven by clear and convincing evidence that Wells Fargo repeatedly violated the Discharge Order.  This Court next addresses the appropriate damages to award as a result of these violations.

### i.        *Debtor has no out of pocket expense or lost income or wages*

According to the record before the Court, Debtor has not incurred any out of pocket losses, other than attorney's fees (addressed below), and has not suffered a loss of income or wages.  Therefore, those types of damages will not be awarded here.

### ii.        *Debtor has incurred and should recover reasonable attorney's fees*

Courts have awarded attorneys' fees when a party (1) willfully disobeys a court order,

---

[14] *See* Wells Fargo Supplemental Memo of law, pages 5-7; Wells Fargo Second Supplemental Memo of Law, pages 6-7.

and (2) is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons.

*Szenes*, 515 B.R. at 7; *Nicholas*, 457 B.R. at 225; *Nassoko*, 405 B.R. at 520; *Dabrowski*, 257

B.R. at 416; *Watkins*, 240 B.R. at 678.  An award of attorneys' fees may also be warranted where

an offending party not only willfully violated the discharge injunction but also acted in bad faith

or in a vexatious or oppressive manner.  *Watkins v. Guardian Loan Co. of Massapequa, Inc. (In*

*re Watkins)*, 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999); *DiGeronimo*, 354 B.R. at 642 (Bankr.

E.D.N.Y. 2006); *Russell v. Chase Bank USA, NA (In re Russell)*, 378 B.R. 735, 743-744 (Bankr.

E.D.N.Y. 2007).  Willfulness requires a showing that the creditor intended the actions that

violated the discharge injunction, rather than a specific intent to violate the debtor's discharge.

*DiGeronimo*, 354 B.R. at 642.  One court has described willfulness as "knowingly going forward

with collection activity … knowing or having reason to know that the debtor was in bankruptcy

and has received a discharge."  *In re Ramos*, Case No. 10-23019 (RDD), 2013 WL 5461859, at

*2 (Bankr. S.D.N.Y. Oct. 1, 2013).  Relevant here, the "mistaken belief that a debt at issue was

not discharged…does not negate a finding that a creditor wilfully violated the discharge

injunction." *DiGeronimo*, 354 B.R. at 643.  As noted above, Wells Fargo's 137 calls were not

technical, unintended, or quickly remedied, but were in fact wanton and oppressive, and thus,

warrant an award of reasonable attorneys' fees.  *Szenes*, 515 B.R. at 7; *Nicholas*, 457 B.R. at

226; *Dabrowski*, 257 B.R. at 416.

Debtor incurred attorney's fees as a result of Wells Fargo's actions by having the

bankruptcy case reopened, filing the Motion, and responding to Wells Fargo's extensive

pleadings.  This Court will award Debtor reasonable attorneys' fees and costs under the

following protocol: (i) Debtor's counsel shall have 21 days from the date of the entry of this

Decision and Order to file a statement of fees and costs, supported by time records and/or billing

summaries and/or invoices; and (ii) Wells Fargo shall have 14 days from service of Debtor's

counsel's statement of fees and costs to file an objection and/or other response. The Court will

then take the issue of attorney's fees and costs on submission.

### iii.    *Debtor is not entitled to emotional distress damages*

Debtor asserts a claim for emotional distress damages as a result of Wells Fargo's

continued violations of the Discharge Order. *See* Debtor's Memo of Law, pages 14-16. Debtor

argues that he told Wells Fargo as early as May 1, 2013 that he had epilepsy and was on

medication, that he stated during one of the many calls that "you [Wells Fargo] all are really

stressing me out over the last 3 years", and that "[i]t was incumbent on Wells Fargo to insure

they did not further increase his emotional distress." *See* Exhibit D, page 2, lines 13-14 to

Undisputed Facts; Debtor's Memo of Law, page 15. Debtor asserts that he should be permitted

to present testimonial and medical evidence of the emotional distress at a damages hearing. *See*

Debtor's Memo of Law, page 15.

In order to sustain a claim for emotional distress damages, a debtor must prove "a close

causal connection between the harm and the stay/discharge violation." *In re McCool*, 446 B.R.

819, 824 (Bankr. N.D. Ohio 2010). *See also In re Burkart*, Case No. 08-61077 (DD), 2010

Bankr. LEXIS 385, at *12-18 (Bankr. N.D.N.Y. Feb. 9, 2010). Debtor did not meet this burden.

According to the record before the Court, Debtor had a medical condition prior to the repeated

discharge injunction violations by Wells Fargo, and there is no evidence in the record that Wells

Fargo directly or proximately caused his condition to worsen. Therefore, it would be

unnecessary for the Court to conduct a hearing to determine the amount of emotional distress

damages to award.

### iv.        Debtor is entitled to punitive damages

Where a clear violation of the discharge injunction has been found, the court may also impose a punitive civil contempt sanction.  *Szenes*, 515 B.R. at 7; *In re Velo Holdings Inc.*, 500 B.R. 693, 700 (Bankr. S.D.N.Y. 2013); *Nicholas*, 457 B.R. at 227; *DiGeronimo*, 354 B.R. at 644. A mere showing that the actions were deliberate is not sufficient for punitive damages; rather, the actions must have been taken with "either malevolent intent or a clear disregard and disrespect of the bankruptcy laws." *Szenes*, 515 B.R. at 7-8; *Nicholas*, 457 B.R. at 227; *Watkins*, 240 B.R. at 680 (finding punitive damages for violation of a discharge injunction also appropriate where there was malicious and egregious behavior).

The purpose of punitive damages is not only to punish the creditor but to also deter that creditor and others from similar conduct in the future.  *Szenes*, 515 B.R. at 8; *Nicholas*, 457 B.R. at 227 (citing *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992)).  Courts have found sanctions for civil contempt appropriate "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Torres*, 367 B.R. at 490.

Wells Fargo's conduct exhibits a clear disregard for the bankruptcy process and the sanctity of Debtor's discharge.  *See Szenes*, 515 B.R at 8 (imposing attorney's fees and a $500 punitive sanction for a bank which not only violated the discharge injunction by sending a letter after it received notice of the discharge order but continued to violate the discharge injunction by sending another letter after it received a letter from debtor's counsel notifying it of its violation); *Nicholas*, 457 B.R. at 227 (assessing a $5,000 punitive sanction against a pro se litigant who violated the discharge injunction by making payment demands and pursuing state court litigation on discharged claims).

The cases in this area have not established a formulaic approach to determine how much in punitive sanctions should be assessed; rather, courts are called upon to exercise their discretion to determine what punitive sanction is appropriate and reasonable. *Szenes*, 515 B.R. at 8. The number of phone calls Wells Fargo made and letters it sent were solely within its control, and it has failed to provide any credible explanation of why, after nearly 2 years of unsuccessfully pursuing Debtor for collection, it made 137 phone calls between May 1, 2013 and November 5, 2013 and sent 2 letters. This Court agrees with Judge Scarcella's approach in *Szenes*, and concludes that a proper and reasonable punitive sanction under the facts and circumstances here, in order to deter Wells Fargo from further efforts to collect a discharged debt from this Debtor or from any other debtor, should be assessed at $500 for each knowing discharge violation. Thus, Wells Fargo should be and is sanctioned $500 for each of its 137 knowing discharge injunction violations by telephone, and for each of the May 17 Letter and the November 26 Letter, for a total punitive award of $69,500.00. This sanction should be paid within sixty (60) days.

## **CONCLUSION**

Based upon the foregoing, it is hereby

**ORDERED**, that Debtor's Motion is granted to the extent set forth herein; and it is further

**ORDERED**, that Debtor's counsel is entitled to his reasonable attorneys' fees and costs incurred in connection with the Motion, and shall file and serve a fee and cost statement in affidavit form within **twenty-one (21) days** after entry of this order, supported by time records and/or billing summaries and/or invoices; and it is further

**ORDERED**, that Wells Fargo may submit an objection within **fourteen (14) days** after

service of Debtor's counsel's fee and cost statement, after which the calculation of and the reasonableness of Debtor's attorney's fees and costs will be on submission with the Court; and it is further

**ORDERED**, that Wells Fargo is also assessed punitive sanctions in the amount of $69,500.00, which it shall pay to Debtor within **sixty (60) days** of entry of this Order; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on Debtor, counsel for Debtor, Wells Fargo, all counsel of record for Wells Fargo, the chapter 7 trustee, and the Office of the United States Trustee.



**Dated: April 16, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**